## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**MONOLITHIC POWER SYSTEMS, *et al.*,**

            **Plaintiffs,**

    **v.**

**BASEUS ACCESSORIES LLC,**

            **Defendants.**

:

:

**Case No. 2:21-cv-5756**
**Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

This matter is before the Court on Defendant Baseus Accessories LLC's Motion to Dismiss or Stay the case (ECF No. 20). The Motion is fully briefed. (ECF Nos. 35, 36.) Plaintiffs Monolithic Power Systems and Chengdu Monolithic Power Systems Co. Ltd's (together, "MPS") bring claims against Baseus for patent infringement under 35 U.S.C. § 1, *et seq.* (Compl., ECF No. 1). Baseus argues that MPS's Complaint fails to state a claim on which relief can be granted, and that the case should be stayed pending the outcome of a related case in the Northern District of California.

## I.  BACKGROUND

The following facts as alleged in the Complaint are accepted as true. MPS designs, develops, manufactures, and sells semiconductor products that have applications in electronics, automotive, communications, and storage products. (Compl., ¶ 3.) MPS has patents covering its semiconductor products, specifically

"synchronous rectifier products," two of which are at issue in this case: Patent No. 8,400,790 (the "790 Patent") issued March 2013, and Patent No. 10,432,104 (the "104 Patent") issued October 2019. (*Id.*, ¶¶ 3, 29–30.) These patents each have "Claims" in which their "limitations" are described. (See, ECF Nos. 1-1, 1-2.)

Two former MPS employees, Mr. Wei Dong and Ms. Lin Sheng, stole trade secrets related to the design and layout of MPS synchronous rectifier products. (*Id.*, ¶¶ 7, 10.) MPS took steps to secure and protect its intellectual property but granted Mr. Dong and Ms. Sheng access to highly confidential information upon their request while they were employed at MPS. (*Id.*, ¶¶ 36–39, 51.) This confidential information was copied to USB drives by Mr. Dong and Ms. Sheng. (*Id.*, ¶ 59.) Their actions violated confidentiality agreements signed as a condition of employment. (*Id.*, ¶¶ 36, 42–43, 48.) Possessing the confidential information, Mr. Dong and Ms. Sheng resigned from MPS around March–April 2017 and took steps to start Meraki, their own semiconductor company. (*Id.*, ¶¶ 9, 54, 56.) Meraki was formed in April 2017 as a Chinese corporation under Mr. Dong and Ms. Sheng's mothers' names as the principal founders. (*Id.*, ¶ 64.) Meraki allegedly developed products modeled off MPS products (*id.*, ¶¶ 66, 71–78) and began competing with MPS by marketing and selling those products to MPS customers. (*Id.*, ¶¶ 9, 79–81.) Meraki has applied for Chinese patents for its "knock-off" products. (*Id.*, ¶¶ 82–89.)

Baseus sells and imports Baseus-branded products that incorporate Meraki's synchronous rectifier products. (*Id.*, ¶¶ 13–16.) MPS alleges that the Meraki/Baseus products ("Accused Products") infringe on the 790 and 104 Patents, and that Baseus

knew of this potential infringement at least by August 2021 when MPS provided notice of its federal action against Meraki in the Western District of Texas. (*Id.*, ¶¶ 97–98, 111–12.) MPS believes that Baseus continues to sell the Accused Products with knowledge of the infringement. (*Id.*)

MPS's action against Meraki remains pending. *Monolithic Power Systems, Inc. et al v. Meraki Integrated Circuit (SHENZHEN) Technology, LTD.*, Case No. 4:22-cv-1986 (N.D. CA Sept. 22, 2020).[1] In that first-filed action against Meraki, MPS brought patent infringement claims based on the same 790 Patent and 104 Patent as in this case. (See, Case No. 4:22-cv-1986, ECF No. 96.)

Here, MPS brings claims against Baseus for: (1) Infringement of the 790 Patent under 35 U.S.C. §§ 271(a), (b); and (2) Infringement of the 104 Patent under 35 U.S.C. §§ 271(a), (b). (Compl., ¶¶ 90–116.) Each of these claims include sub-claims for direct, induced, willful, and contributory patent infringement. (*Id.*)

## II.    MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint that falls short of the Rule 8(a)

---

[1]On March 29, 2022, MPS's claims against Meraki in the Western District of Texas were severed into a new case and transferred to the Northern District of California. (ECF No. 37.)

standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

**B. Analysis**

For each patent, Baseus argues that MPS's claims of direct, induced, willful, and contributory infringement are incorrectly pled and should be dismissed for failure to state a claim.

**1. Direct Infringement**

Under 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the

4

United States any patented invention during the term of the patent therefor, infringes the patent."

In its motion, Baseus argues that MPS's direct infringement claims must fail because MPS's factual allegations supporting the '790 Patent and '104 Patent are too broad and therefore do not give adequate notice of the potential infringement. Baseus takes issue with the fact that MPS did not cite the exact Claim language of the asserted patent limitations.

However, the Rule 12(b)(6) standard is not so strict; MPS need only state a claim that is "plausible." And here, MPS pleads that an Accused Product contains "the Meraki MK91808, and the Meraki MK91808 contains all the limitations of Claim 1 of the '790 Patent" and "all of the limitations of Claim 3 of the '104 Patent." (Compl., ¶¶ 92, 105.) MPS provides additional detail as to both patent limitations. For the 790 Patent, MPS recites the limitations described in Claim 1, alleging the Accused Product has a "synchronous rectifier with both synchronous rectification circuity and signals[;] has a light load circuit that receives an input voltage[;] and selectively latches off synchronous rectification based on the input voltage being the same as the gate voltage, as a turn-off blanking time is applied, during which the gate driver signal is latched off." (Compl., ¶¶ 93–95.)

For the '104 Patent, MPS recites the limitations described in Claim 3, alleging that the Accused Product:

> is a controller for a synchronous rectifier. The MK91808 has at least two comparators, the first of which compares a voltage threshold with the voltage across the synchronous rectifier to provide a comparison signal, and the second of which compares a different voltage threshold

with the voltage across the synchronous rectifier to provide a comparison signal. The MK91808 has a pulse circuit receiving the output from the first comparator, and outputting a pulse signal, which pulses for a pre-set time period when the first comparator's output changes. The MK91808 has a logic gate circuit receiving the pulse signal, as well as the output from the second comparator, which provides an on-control signal based on a logic operation to the pulse signal and output from the second comparator. This on-control signal controls the 'on' operation of the MK91808.

(Compl., ¶¶ 106–09.)

These details, while not textually identical to those in Claim 1 for the 790 Patent and Claim 3 for the 104 Patent, establish plausible claims for direct infringement. (See, ECF No. 1-1, PageID 51; ECF No. 1-2, PageID 68.) That the language of the patents' limitations as pled is not identical to the patents' claim elements does not mean that Baseus is without notice. MPS referred to specific Accused Products and alleged they incorporated Meraki's infringing products, and it provides details about the patents' limitations while referring to specific claims.

Thus, for both the 790 patent and the 104 patent, MPS pled sufficient facts that, taken as true, create a reasonable inference as to Baseus's liability. *See Iqbal*, 556 U.S. at 678; *see also Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*, 2021 WL 3931910, at *4 (W.D. Tex. Sept. 1, 2021) (finding that dismissal is not appropriate even when MPS did not use "exact or nearly identical language of the asserted patent claim elements to show infringement").

Accordingly, Baseus's Motion to Dismiss the direct infringement claims for each patent is **DENIED**.

## 2.  Induced Infringement

First, Baseus argued that MPS's induced infringement claims must be dismissed because MPS has not adequately pled direct infringement fails; the Court does not dismiss the direct infringement claims.

To state a claim for induced infringement, MPS must demonstrate that "the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). MPS must also allege a specific intent to induce infringement, which is "evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

Baseus contends that MPS alleges no facts supporting the allegation that Baseus knowingly continued to sell the Accused Products after receiving notice of the potential infringement in August 2021. However, the allegations that Baseus knew of the patents and potential infringement, coupled with the allegations that Baseus had "ongoing active intent and encouragement of end retailers and customers to purchase and use infringing Accused Products in the United States" (Compl., ¶¶ 97, 111), taken as true, are sufficient.

Accordingly, Baseus's Motion to Dismiss the indirect infringement claims for each patent is **DENIED**.

### 3. Willful Infringement

To state a claim for willful infringement, MPS must allege facts plausibly showing that Baseus acted with knowledge of the asserted patents and the infringing use, and that the infringement was deliberate or intentional. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). An allegation "that a defendant continues its allegedly infringing conduct even after receiving notice of a complaint is sufficient to at least state a claim for willful infringement." *BillJCo, LLC v. Cisco Sys., Inc.*, 2021 WL 6618529, at *8 (E.D. Tex. Nov. 30, 2021).

Here, MPS alleges that Baseus had knowledge of the 790 and 104 Patents and potential infringement "dating back to at least . . . August [ ] 2021," and has an "ongoing active intent and encouragement of end retailers and customers to purchase and use infringing Accused Products in the United States." (Compl., ¶ 97, 111.) Thus, MPS has plausibly stated a claim for willful infringement. *See BillJCo*, 2021 WL 6618529, at *8.

Accordingly, Baseus's Motion to Dismiss the willful infringement claims for each patent is **DENIED**.

### 4. Contributory Infringement

To state a claim for contributory infringement, MPS must plead facts showing that: (1) Baseus knew the alleged infringing products are material to practicing the invention and have no substantial non-infringing uses; (2) Baseus knew that the alleged infringing products were especially made or especially adapted to infringe the patents at issue; and (3) a third party used the alleged

8

infringing products to directly infringe the patents at issue. *Gold Crest, LLC v. Project Light, LLC*, 525 F. Supp. 3d 826, 841 (N.D. Ohio 2021) (citation omitted).

Here, MPS's only allegation of Accused Products having no "substantial non-infringing uses" is a mere recitation of the element untethered from the grounds of its direct infringement claims; the allegation goes to a different Accused Product than alleged for its direct infringement claims. (Compl., ¶ 77.) Thus, MPS has not stated a plausible claim for relief. *See Monolithic Power Sys., Inc.*, 2021 WL 3931910, at *5 (finding that MPS merely recited the "substantial non-conforming uses" element and provided no supporting allegations).

Accordingly, Baseus's Motion to Dismiss the contributory infringement claims for each patent is **GRANTED**.

## III.    MOTION TO STAY

Baseus argues the case should be stayed pending resolution of the action between MPS and Meraki in the Northern District of California.

A district court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In determining whether to grant a stay, "district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Ferrell v. Wyeth-Ayerst Labs., Inc.*, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (Beckwith, J.) (citation omitted).

9

The first-to-file rule stems from the principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Proctor & Gamble Co. v. Team Techs., Inc.*, 2012 WL 5903126, at *2 (S.D. Ohio Nov. 26, 2012) (Black, J.) (citing *Smith v. McIver*, 9 Wheat. 532, 22 U.S. 532, 535, 6 L.Ed. 152 (1824)). The rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) (citation and internal quotation marks omitted). The policy underlying this rule is the preservation of judicial resources "by minimizing duplicative or piecemeal litigation" and protecting against the possibility of conflicting results. *Id.* (citation omitted).

In patent infringement cases, "[t]he critical inquiry for first-to-file purposes is which court 'first obtains possession of the subject of the dispute, not the parties of the dispute.' " *Proctor*, 2012 WL 5903126, at *2. The subject matter requirement is satisfied in patent infringement matters "where the actions in question involve the same patent and the same allegedly infringing product, though not necessarily the same parties." *Id.* (citing *Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F.Supp.2d 404, 409 (E.D. Pa. 2008)).

Here, MPS filed its complaint against Meraki on September 25, 2020, in the Western District of Texas. MPS's second amended complaint in that case joined Baseus on September 20, 2021. (Case No. 4:22-cv-1986, ECF Nos. 1, 63.) MPS filed

its complaint against Baseus in this Court on December 13, 2021. (ECF No. 1.) Thus, the Texas action was first-filed.

Baseus and MPS were both parties to the Texas action prior to MPS's claims against Meraki being severed, and prior to MPS voluntarily dismissing its claims against Baseus. (Case No. 4:22-cv-1986, ECF Nos. 115, 119.) Even though the parties are not identical, the subject matter of the related cases is the "critical inquiry." And here, the fundamental subject of both disputes is whether Meraki products infringed on the '790 and '104 Patents. *See Shire*, 543 F. Supp. 2d at 409. The answer to that question is dispositive of MPS's infringement claims against Baseus in this Court, as Baseus is a downstream customer of Meraki. Thus, judicial efficiency and resources are best preserved by the Court staying the case under the first-to file-rule pending the outcome of the MPS's claims against Meraki.

Accordingly, Baseus's Motion to Stay is **GRANTED**. The parties are **ORDERED** to submit a status report **every six months** on the status of MPS's claims against Meraki in the Northern District of California.

IV.    CONCLUSION

For the foregoing reasons, Baseus's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. MPS's claims for contributory infringement as to each patent are **DISMISSED**. Its remaining claims survive.

IT IS SO ORDERED.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**

11